The first case of the night this morning is 2-23-0453 in the state of Illinois. The case was the August 19th, 1977. Our jury won't be happy. We have 7, Mr. Richard S. Montgomery. Our jury won't be happy. We have 8, Ms. Jamie L. Montgomery. Both sides ready to proceed? Counsel them when you're ready. Bless you. Bless you. Oh, it must be you guys. Good morning, Your Honors. Thank you. Counsel, may it please the Court, my name is Richard London on behalf of the people of the state of Illinois. Your Honors, in order to reverse the lower court's decision, as we are asking you to do here today, the people need to demonstrate that the trial judge's decision was manifestly erroneous. In order to uphold a natural innocence claim, the defendant needs to, well, the finding needs to be that the affiant was credible and that the evidence was of such a conclusive character that when considered along with all the other evidence would probably lead to a different result on retrial. Well, didn't the trial court find that the witness was credible in so many words? Your Honors, I almost would prefer if he hadn't made a finding. Of course you would have. Well, I mean, because I don't mean that finding. Almost that he hadn't supported, quote, unquote, his finding. If he had simply said reverse remand, we wouldn't be arguing the same, you know, case that we're arguing today. So he said he was credible, but he had some issues, but yet he was credible. I don't know that he said he was credible. He said his credibility wasn't so poor. That's the, I would be the lamest, the worst finding of, quote, unquote, credibility that I've ever heard. But is it manifestly erroneous? We would think so. We would think so in conjunction with the fact that he then didn't also meet the second standard, which is that the evidence was so conclusive. He basically said it's not so poor that the jury isn't entitled to hear what he has to say. That simply isn't the standard. The standard has to be. Are we talking magic words or the gist of what he said? I don't think it's magic words, but we also don't want to. Do we, are we going to say that the fact that he remanded, that that in itself creates the gist? I don't think we can. If what he says, he finds Mr. Frazen credible enough, and if what he says is what happened, then the defendant never fired a bullet. May have clicked a gun, but he didn't discharge a bullet. That isn't exactly what the trial court said. That's not exactly what this court said. The fact is that we have, clearly it is the defendant's position that only one bullet was fired. It is not the people's position, and that's part of the problem here, is that the lower court judge had made such a strong and definitive finding when he denied defendant relief at the second stage. He said the evidence that defendant fired a bullet is strong, and I could obviously go through some of it here if your court wants. We've included it in our prior briefs, so I won't unless, you know, you'd like me to. But the evidence that defendant fired a bullet is so strong, so even if Frazen may have fired, who cares? It doesn't matter. So, you know, again, yes, that's the... So one shot, one shot was heard. We have evidence that there was one shot. We have evidence that there was more than one shot. I think that was a statement, not testimony, correct? No, there was testimony. There was testimony. Again, we find the evidence. We find our, you know, victims. We find everybody as we find them. Great. The testimony at trial from the victim was that there were shots fired. Literally, and again, you know, fronting it, there's no question that shortly thereafter he, Mr. Ramos, the victim, then said, how many shots? Oh, one shot. So the victim himself was unclear. The police officer said, you know, when he testified, that one, there were, the call that went over was shots fired, not taking that as strong evidence because, again, that was a report. But when he arrived at the scene, he testified that the victim said shots. The recording, which, unfortunately, is not available, as this Court is, I'm sure, aware, has been destroyed, or at least is not playable, apparently had one faint shot. So we just simply don't know if the shot was faint because the shot that defendant, that we suggest defendant fired, was already kind of faint because Mr. Pinnell, the police informant, was far enough away and the listening device was in his clothes, so that was muffled. How muffled would it be would we also have heard the shot, if indeed it was fired by Mr. Fezzan, from about a block away when we already believed that the shot was muffled. But we also have the victim, as well as Pinnell, testified that defendant fired a shot. So when we're looking at the juxtaposition of the evidence that was introduced at trial and the credibility of Fezzan, 12 1⁄2 years later, 12 1⁄2 years later, well, 12 1⁄2 years later for the affidavit, 20 years later, almost 20 years later for the testimony, we don't believe that the trial court judge did what he was supposed to do on remand. That's a good question. That's another question I have for you. You, in your brief, talk about the mandate and how the trial court didn't follow our mandate. How do you submit that he did not follow our mandate? Well, he didn't follow the mandate clearly relating to this court's mandate that he address, in addition to the aggravated discharge, the special interrogatory of whether or not the defendant actually fired the weapon. And that was part and parcel. That is left open, I mean, completely. And then the fact that his finding, which we said the language is problematic, relating to the finding that he didn't, arguably, may not have fired a shot, how that impacted the attempted murder. Because as we're saying, we just simply don't know what will happen with the sentence. But is that our issue here? Is the sentence our issue here? It isn't. That's why we suggested that a remand is necessary. I mean, bluntly speaking, this is a problem with actual innocence claims that can be brought years after the fact. In this particular case, I simply don't know. I don't ask. I don't want to know from Kane County anything beyond the four corners of our case. I simply don't know if they're going to be able to retry this case, assuming it goes back. We don't have the recording. Is that a factor? Should we consider that? It's not a factor in whether or not the trial court judge's decision is manifestly erroneous. It is a factor if we're trying to look at the evidence that occurred at trial versus what credibility Faison might have had. But no, I'm not asking you to say, well, we're a state. We might not be able to retry. What I'm saying is that's why the second issue is of such importance here, is the fact that if we can't retry, it's very important to determine. And, again, as we've said, it's premature. It's not really for this court to make that determination. At the very least, we do need to remand for a determination on what happens with the sentence on the attempt to murder. I do want to suggest that that — Can I ask, is it your contention we don't have the authority to vacate that finding or otherwise correct it without a remand? Vacate the finding of the special interrogatory? Yeah. I think the court — this court does. You know, defendant suggested that. We don't disagree. The court has the authority. I'm not sure that that wouldn't be a more appropriate decision for the trial court judge to make. Can I ask, would the standard be the same, the manifest error clearly plain, evident, and indisputable error? I'm not sure because the finding wasn't made. So we can't really say that the lower court's decision was or wasn't manifestly erroneous because the lower court didn't make a decision on that. The lower court simply — that was our concern with not following the mandate. The lower court just simply didn't do it. So does this court want to basically say, well, because — and, again, I'm not assuming that this court has made a decision, but at least with the questioning there is at least implied that this court might determine that despite the language that the lower court judge did find, that there's at least a significant enough concern as to whether or not defendant discharged a weapon. But assuming that's the case, that still would be a determination that the — probably the lower court should make first. I don't want to have it go back and forth again, but I'm pretty certain that if this court were to say you didn't follow our mandate, we're asking you to make a determination on the second issue given everything that's going on. And perhaps — and, again, I'm not suggesting that is my place to advise the court, but maybe suggest at that time that the trial court judge make some more specific or definitive findings. It's not going to come back up here on that issue. It may or may not come back up on the issue of the sentence, depending on what is done below. I do want to add — and, again, I don't think this is problematic. I don't think it's forfeited. The people did not raise a fact that I think is potentially very relevant. It came up in our prep for this oral argument, and that is relating to Faison's credibility. In addition to all of the other issues that we raised in our briefs, there is also the fact that it is interesting, to say the least, if not very impactful on Faison's credibility, that we do have this audio recording, and we do have the transcript of the recording. It's very interesting that no one in the car — defendant, Pennell, the other two members in the car — no one said something along the lines of, hey, oh, my Lord, there was a shot. Faison's testimony was he fired a shot to scare these people away. There's nothing in the recording, like I said, or anywhere, where there's an indication that another shot was fired by an unknown person. You would think that there would be more discussion than just simply defendants saying something along the lines of, I had him. Let's go back and let me, you know, wash off — take a shower and wash off the gunshot residue. Someone would have said something along the lines of, oh, my God, we better get out of here. We're in danger. Did you hear that? That wasn't done. That combined with the concern that Faison did not mention Pennell approaching the scene and or that he saw a defendant with a gun, which there's no dispute defendant had a gun. The defendant argues that, well, he wasn't asked those questions. Why would he front that? Those would be pretty important factors. If he's claiming that he was protecting himself and or his associated gang member, that someone was rushing to the scene and or that defendant had a gun. The fact that he's saying the defendant didn't fire that gun, I did, or I fired a shot. Yeah, that's important and relevant. But the fact that he claims the defendant didn't even have a gun and or he didn't see, taking that into account with, as I said, it's not a new fact of the case. It's a new fact. And again, I want to front that, that I am bringing that out for the first time. But that is clear from the record. And I think that's a very important aspect, or I should say the people think that's a very important aspect, that that wasn't, there's just absolutely zero evidence of that on the recording or in the transcript. And while we can't, unfortunately, play the recording, we do have that transcript. There was a lot said about the motive for Faison coming up with this story. In the briefs for the defense, they indicate what you're talking about is mere speculation. How do we take what you're saying as given any more weight other than mere speculation that, oh, maybe he did this because he was mad that he, too, was framed by the prosecution and by the police officers? I mean, how do we not take that as mere speculation? Sue, if you'd like me to answer. Unfortunately, any time we have a circumstance like this, there is always a degree of speculation. We can't say. Definitively, I mean, I wish we could. I wish there was some way of knowing, you know, if we had a perfect lie detector system, you know, our court system, our system of justice would be completely different. But I think, was it the officer who testified? Well, maybe they were putting money on his account in the prison system. Whatever the reason is. Did anybody check that? I mean, as opposed to mere speculation, you might be able to have some facts. I can't obviously say because that wasn't in the record. What the officer did testify to is, simply speaking, and again, that's why we have experts testify, and this is a gang expert, the expert testified this simply doesn't happen. It doesn't happen without some impetus, whether it's money was paid, whether I have no clue, and again, I'm not going to speculate beyond the record as to whether or not a defendant or someone from the defendant's gang, you know, filed an affidavit in Mr. Faison's case in return. You know, if there's threats being made, that is beyond the record. It is beyond the record, but it would have been easy to prove. I mean, really. It would have been easy to prove if money was transferred. I don't know that that would necessarily be the case. I don't know. Should we make the opposite inference, that nothing else was brought forward, therefore nothing else exists? We certainly cannot, again, the people are not going to suggest that there is anything definitive in the record that demonstrates a payment. That wasn't the question. Not what's in the record, but should we assume that because there isn't something in the record, there was an inquiry made, but simply nothing to substantiate that allegation? That is beyond the record. This Court can't make it. The same way the people aren't going to attempt to speculate, this Court cannot do so either. What we do have is testimony from a gang expert that says this doesn't happen. It's great to say, well, 37, I'm 37 now. This is 20 years ago. I'm a different person. Found the lawyer in prison. Again, that's great. That's, again, part of the problem with having an affidavit, an affidavit come forward 12 1⁄2 years after the fact, and again testify almost 20 years after the fact. That's why the language from the lower court judge is problematic, why we believe that it is manifestly erroneous, why words matter, and we do believe that the lower court judge in this case, and unfortunately potentially in too many cases, but that's another story, is somewhat influenced by the wording of this Court. And instead of looking at it, okay, this Court simply said at this juncture we can't make a determination on the credibility of Faison, but if Faison was the only one that fired a bullet, that would be relevant. Relevant doesn't matter. Conclusive nature is what should matter. But the trial court judge then basically takes his former finding, the evidence that defendant fired a bullet was strong, regardless of whether Faison also did, and juxtaposes and, well, is that, you know, his credibility isn't so poor that maybe let the jury hear it. That isn't the standard. No further questions. Thank you. Thank you, Your Honor. Thank you for letting me go a little bit beyond.  Good morning. Good morning, Your Honors. Counsel, may it please the Court. My name is Jamie Montgomery. I represent Augustine Montes, the appellee. Mr. Montes contends that the trial court here did exactly what it was supposed to do in terms of the aggravated discharge charge. The Court considered the testimony that Faison presented at the evidentiary hearing and considered it along with the evidence presented. You know, the Court stated that it reviewed the transcripts and the record and was considering all the evidence presented at trial in addition to the new evidence presented and determined that, as Justice Jorgenson said, the Faison was credible enough. And the — Let me ask you something, Ms. Montgomery. If Mr. Faison were a witness for the State against your client in a 12-and-a-half-year later affidavit and a 20-year later testimony, would we be talking about the same thing? Would you at this point see their point in the issues that they're raising here today? If he was a separate witness, the State brought out the evidentiary hearing where my client was making a separate actual misdemeanor? Not in this case. Not in this case. Any type of case. I mean, as a defense attorney, how are you going to look at a witness that never made a statement until 12-and-a-half years later when he decided to file an affidavit? All of the issues that Mr. London is raising with respect to the credibility of his witness, wouldn't you agree with those were the tables turned? Well, this Court in the appeal from the second stage noted that there were compelling reasons why it took so long. That part of the reason why the, you know, Mr. Montez did not know that Mr. Faison existed until they met in 2015, 10 years after the offense. And as the Court noted in the previous appeal, that also required here was the maturation of Mr. Faison to come to understand, you know, the impact of having been, you know, in his mind, wrongfully convicted. We don't know what happened in his case. But in having, I can't remember the Court's exact words, but something along the lines of, you know, kind of getting to the point where he realized that it was the right thing to do to come forward. And when he, and also the Court noted that, like, the time that it took for the, there was about a year between when he signed the affidavit and when the petition was filed. But that was understandable based on, like, the amount of time things take when people are incarcerated. And in terms of, like, do I think that the Court's statements about the credibility finding could have been clearer? Sure, except that the Post-Conviction Hearing Act does not require the Court at a third-stage evidentiary hearing to present any analysis or state any reason why the Court is either granting or denying the petition. Unlike at the first stage where the statute requires the Court to issue a written order going through its factual and legal decisions. At the third stage, the Court is not required to, it just has to enter an order. It doesn't even have to be a written order. And in, you know, I think this case is actually fairly, what the Court said here was fairly comparable to what our Supreme Court said in People v. Coleman, the 2013 Coleman that is cited in both of our briefs, where the Court there acknowledged that the five, there was five witnesses who had come forward that were all eyewitnesses. And the Court noted that there were certainly some credibility issues with those witnesses and that it was possible that their credibility, you know, could be affected on retrial. But the courts, you know, acknowledge that and acknowledge it in the sense that that is something that the trier of fact on retrial will have to determine. But shouldn't the trier of fact determine that at the third stage of the post-conviction petition hearing? Credibility is the issue, basically, at the third stage, is it not? Credibility is part of the issue, but it's not, the Court is not supposed to determine whether or not Faison is more credible or Pinnell is more credible, because if the Court was to determine strictly who's the most credible, then the outcome would be that Mr. Montes would have been, his conviction would have been vacated. That would be a certainty and a finding that the evidence was not sufficient to convict. And as the Court in Coleman and Robinson note, that the determination is, the Court at the third stage is not to re-decide guilt. It's simply to determine whether or not the evidence is of such a conclusive nature that it potentially, that it has the, I'm sorry, I'm blanking on the exact wording, but has the ability, that it puts the evidence in a different light and undermines our confidence in the result at trial. And that is what the Court determined here. The Court said, you know, there's credibility issues on both sides. And here, it was convinced that given, that Faison was credible enough that the Court had doubts about the result of the guilty findings at trial. And that's all they needed. That's all that's required at the third stage. What do you say in response to Mr. London's argument that they all get back, he gets back into his car, they get back into the car? Because Parnell is with him. And they start talking about, oh, my God, I think I got him, or let's go over here, let's see if we can get him. Nobody ever said, hey, did you guys hear that other shot? Or did anybody hear another gunshot? I mean, what do you make of that? Isn't that something that is evident or they should have known that there was another gunshot that went off? Nobody commented on it. Well, I agree that it might seem like that would be something that would be said. We can speculate that way. But I would also speculate that there is, you know, from the evidence that was presented, everyone believed that Montez fired the gun. And the reason he took a shower to wash gunshot residue off was because he believed he fired the gun. But if there was no ammunition in that gun, he did not fire the gun. Regardless of what everybody thought at the time, you know, based on what was happening, what people were seeing. Didn't Parnell say there was one other bullet in the chamber? He said he didn't know. He did not know. He ejected the clip but did not know. And so it was possible that there wasn't another bullet in the chamber. So we have no idea. And at the time, before Faison's testimony came forward, it was a reasonable inference that, okay, there must have been one bullet in the gun and it was Montez who fired it. But now we have evidence from Mr. Faison that puts that in a different light. 20 years later. Correct. And I just want to speak to the comment about Parnell's credibility and the fact that, I'm sorry, not, Faison's credibility and the fact that he did not see Parnell and didn't comment, did not say that he saw Parnell running after him. Ramos also didn't see Parnell. I covered this in my brief, I believe, as well. But each of the attacks on Faison's credibility for things he did not testify to, either were things that no one asked him or were things that Ramos also didn't see and also would have seen. And the only, the, you know, so the fact that whether or not Faison saw Parnell coming up after Mr. Montez is not the attack on Faison's credibility the State makes it out to be because Ramos also didn't see that and did not, or I should say did not testify to. He actually said, I only saw one person. And in terms of the State's argument that the trial court had this, made this about-face and had a very strong finding at the second stage that the evidence was very strong that Montez fired the gun, a lot of the court's finding was based in the court comment on the fact that Montez admitted firing the gun. Well, that admission never happened, as this Court said in the second stage appeal, where, you know, Montez in that, I'm sorry, not the previous appeal, in the first successive petition where he raised the entrapment defense, this Court said that he could not raise an entrapment defense because he has never admitted firing a gun. And so the trial court's finding that the evidence was so strong and that Montez had admitted firing the gun was based on the court's misapprehension of what the facts of the case were at that time. And the reason the court perhaps had such an about-face was because it now recognized that it could no longer rely on a belief that Montez had admitted firing the gun and that all of the reasons why everyone thought Montez fired a gun were now in question because we have evidence that someone else fired the gun and was a source of the shock that was heard. If we should affirm, would you ask this Court regarding the personal discharge issue? I believe this Court should modify the judgment and there is no reason why this case should go back for the trial court to look at the same facts and decide whether the exact same facts that the state admits are relevant to both the aggravated discharge and the personal discharge. If the court found that the evidence was sufficient to warrant a new trial on the aggravated discharge, it's the same facts, the same analysis, the same logic for the personal discharge enhancement. And remanding it for the court to dot its I's and cross its T's would be a waste of judicial resources. This Court has the authority as the state concedes to modify the judgment and send this back simply for a retrial on both. So I would ask this Court to affirm as modified. Thank you. If there are no further questions. Thank you. I have one further question. Do you think we need to address or should we address sentencing at this point? No. Okay. The trial court can determine that when and if it becomes relevant. Thank you. Counsel? Just to clear up a few things, Your Honors. Parnell did not testify that there was definitively a bullet left in the gun, but he did definitively testify that he not only heard, but he saw defendant fire the gun. He did not testify that he saw defendant. We keep saying fired, fired, fired. You can fire a gun all you want. It's not aggravated discharge unless a bullet comes out. That's the issue here. Not whether a gun was fired, whether a trigger was pulled. And so we all have been kind of using this language interchangeably. The question is, did a bullet come out? And Mr. Parnell was not in a position to have seen it one way or the other. I don't necessarily agree. I mean, Parnell was close enough that the testimony seemed to suggest. He was not examined by either party. Did you see a flash? Did you see? And that would indicate that a bullet was fired. And Ramos doesn't even see Parnell. Ramos doesn't see it. That was going to be one of the second things I was going to cover, was Ramos doesn't see Parnell, but that makes sense because Ramos said as soon as he saw defendant raise the weapon, he turned and ran. That is completely different than Faizan, who supposedly is facing the scene the entire time, protecting himself and his associate or distant associate, Ramos. So the fact that Ramos didn't testify he saw is definitely explained. The fact that Faizan did not is not explained. If we definitively know that only one shot was fired, there will be a different issue. Even this court still, in its opinion, said, well, even, you know, assuming more than one shot was fired, that would be, you know, worth the jury to possibly hear. The people disagree. If more than one shot was fired, then we don't care whether or not Faizan also fired a shot. The evidence was strong. There's a difference, Justice Jorgenson, between saying we don't know if defendant expelled a bullet. The fact is defendant believed he did. You don't get gunpowder residue from pointing a weapon. You don't get gunpowder residue from clicking a trigger. Defendant believed that there was gunshot residue, which only takes place if a bullet is expelled. That's a simple fact. So the fact that he believed that he needed to take a shower is definitely a strong factor. Yes, in the first PC. But if he heard a bullet, if he heard a shake, he's pulling the trigger. And this only works if at the precise moment he's pulling the trigger, Mr. Faizan is also pulling the trigger. But if the defendant heard that when he's pulling the trigger, he would think he fired a bullet because he comes back and says, I missed it. Isn't that consistent with also not shooting a bullet? Wouldn't one think that? I don't mean to answer the question. I don't mean to be the devil's advocate, but go ahead and answer your question. I'd be happy to take the devil's advocate question after. We have all more. We always have circumstances where we say, wait a second. Defendant would be the unluckiest person in the world if it just so happened that these weird coincidences all added up. Here, defendant is arguably the luckiest person in the world. If the exact instance that Ramos sees him raise the weapon and hears a gunshot, and that it's so instantaneous that defendant believes, not just because he feels the impact of the bullet exiting the gun, which I think would be, Your Honor, a much more realistic reason. That was the devil's advocate question. To believe that he fired a gun. There's a big difference between pointing a gun, pulling a trigger, hearing supposedly a distant gunshot, thinking like, oh, was that my weapon? Versus that he's pulling a gun, feels the impact of the bullet exiting. And again, like I said, he would be the luckiest person in the world and Faizan would be one of the most skilled people I ever know to coordinate so perfectly the firing the shot with the weapon being pointed at Ramos. May I? Yes, Senator. That Faizan says defendant didn't even have a weapon. No. With all due respect, he says I didn't see a weapon. He says one thing in what he testifies is clarified in the affidavit or the other way around. So you use the inference to coordinate. There is no testimony that Faizan was coordinating with anyone. I'm not suggesting so. I was kind of almost responding in advance. I appreciate that. But there is no evidence of that. No. I'm saying, though, that, again, defendant would be the luckiest person in the world, I suppose. If that, I did not mean coordination in plan, but if, in fact, the gun. Coincidentally. Coincidentally. Yes. Coincidentally, Faizan fired at exactly the instant. But as I said, more importantly, the fact that defendant believed enough that he fired a weapon to go take, that just doesn't really fly with the concept of potentially hearing a dis-use. I better just to be safe. I better, you know, take a shower. In addition, at the first PC, while this court found that defendant never acknowledged that he fired a weapon. The first affiant, and I do forget the name, but one of the other people in the car also suggested, strongly suggested, that defendant fired a weapon. But the entrapment defense was not defendant acknowledging that he fired. It was one of his cohorts, one of his fellow gang members, that said, yeah, he did, but he did so potentially or supposedly at Pennell's insistence. So we have that in addition, the first affiant said that defendant did fire a shot, but he did so because Pennell's, the gang enforcer, supposedly threatened him or suggested that if he didn't do this, you know, there would be repercussions. For all these reasons, not only was argued today, but obviously in our prior pleadings, this court should find that the lower court's decision was manifestly erroneous. I don't think the people, or certainly myself, which again, I know we're not supposed to interject, but has ever requested, but this might be the rare circumstance for, we would ask that this court doesn't make a finding on the special interrogatory. We hand back for the lower court to make that finding with instructions to clear everything up and say, I definitively find that he was credible and that this evidence would have been conclusive and why. And at that point in time, it could also, this court could also suggest that the court make a finding or allow the parties, because defendant has every interest as well. If there is a remand for a new trial, and this court upholds that, that the parties would want to consider what needs to be done with the sentence for the attempt murder. So you'd like us to weigh in on what the range should be? No, no, no, I'm not suggesting this court weigh in. I'm saying this court should remand for a finding on the special interrogatory and allow the parties back at the lower court to make. Isn't that something of a slippery slope if we start to say, yeah, the findings aren't quite right? I think we'll remand and ask the trial judge to clarify not what they said, but what they meant. I mean, is it a slippery slope? To some extent, yes. And again. It would simplify my life a lot. Which is why I think it would simplify all of our lives. Which is why I've suggested I've been doing this for many years. I've never suggested this. But this is such a circumstance where we do believe that, again, the judge is presumed to follow the law. Defendant says that. We agree. But the judge also, if he does choose to make findings, if he does choose to use words, those words matter. And we honestly don't believe that these words are sufficient to reach the two findings. That defendant, affiant, was credible and that that would be so conclusive. It simply, it almost begs the question of, you know what, defendant kind of, sort of, maybe should be entitled to, you know, another day in court as opposed to definitive findings that, you know, the affiant was credible and that it was conclusive. I just don't believe that this finding reached that level. But isn't the real issue whether the record supports the ruling and the ruling is he's entitled to a new trial? Isn't that where we look for the manifesto? Well, if you're looking at does the record support or the finding, does the record support, again, the record would support that if we clearly know that there was only one shot fired. But where the evidence. But that's a way in sorts that it should be best left to the trial court, isn't it? Not this court. It's left to the trial court if he actually looked at and made those findings. The people just simply don't believe that he did, which is why we're asking to reverse. So your position, your bottom line is the trial court didn't make the proper findings as opposed to the findings he made were against the manifest way. Both. We can't have it both ways. Either they weren't sufficient. The findings.  Not based. The great findings that he made were against the manifest way. The basis for his findings were not accurate. He didn't look at the full record when he made this determination. And we believe that that's supported by his abrupt reversal from the strength of the case, as supported by the arguments we've made, including, again, acknowledging the new fact or the new thought process of that if indeed a shot was fired, the people in the car would have been commenting on it. Okay. Thank you both very much. We are adjourned for the day as you were our only argument today. Thank you. All rise.